UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| **CLINT LAVASTON WALKER,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | 6:12-cv-8038-SLB |
| vs. | ) | |
| | ) | 6:08-cr-0076-SLB |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION**

This case is before the court on petitioner Clint Lavaston Walker's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (Doc. 1).[1]  Upon consideration of the Motion, his Brief in Support, the government's Response, and the relevant law, the court finds that the petition is due to be denied, as set out below.

**PROCEDURAL HISTORY**

Petitioner was indicted on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Crim. Doc. 1).  He pleaded guilty to this charge, and on December 2, 2010, was sentenced to 120 months imprisonment, to be followed by a supervised release term of 36 months.

---

[1] Citations to the record concerning Walker's § 2255 motion, Case No. 6:12-cv-8038-SLB, appear as "(Doc. __)."  Citations to the record in the criminal proceedings against Walker, Case No. 6:08-cr-0076-SLB, appear as "(Crim. Doc. __)."  This Motion was initially filed in petitioner's underlying criminal case, (Crim. Doc. 22).

1

Defendant filed a Notice of Appeal on December 6, 2010.  On August 30, 2011 the United States Court of Appeals issued as mandate its order affirming defendant's conviction and sentence.   Petitioner filed the instant § 2255 Motion on August 23, 2012, alleging:

> Counsel rendered ineffective assistance at sentencing, in violation of the Sixth Amendment right to effective assistance of counsel, and further rendered ineffective assistance on direct appeal.
>
> At the sentencing hearing, counsel presented no meaningful mitigating evidence despite being asked to do so by defendant.   Specifically, counsel never made any argument that the possession of the .22 rifle was for hunting purposes only.  Defendant repeatedly asked counsel to inform the court of the rifles use, i.e., squirrels and such.  Counsel made no argument as relates to the instant offense being a non-violent crime, though specifically asked to do so.  Defendant was told by counsel that he would do these things but didn't.  Defendant's motive in pleading guilty was based on counsel's promise to notice the court to these matters.  Additionally, at time of sentence, Defendant's common-law wife presented an inflammatory letter to the court detailing allegations of abuse.  Defendant asked counsel to request a continuance so that they could better prepare a rebuttal.  Counsel ignored Defendant.  Counsel's ineffective assistance resulted in a longer sentence for defendant.  Counsel additionally did not raise issues I requested on appeal.

(Doc. 1 at 4.)

## DISCUSSION

**Ineffective Assistance**

To succeed on a claim of ineffective assistance of counsel, a petitioner must establish: (1) deficient performance—that his "counsel's representation fell below an

2

objective standard of reasonableness;" and (2) prejudice—but for the deficiency in representation, "a reasonable probability exists that the result of the proceeding would have been different." *See Strickland v. Washington,* 466 U.S. 668, 688-696 (1984); *see also Chandler v. United States,* 218 F.3d 1305, 1312-1313 (11th Cir. 2000).  The burden of proving ineffective assistance remains with Mr. Walker at all times.  *See Chandler,* 218 F.3d at 1315, n. 15.

The performance prong of *Strickland* "requires a petitioner to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment." *Butcher v. United States,* 368 F.3d 1290, 1293 (11th Cir. 2004).  The proper measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688.  Because a wide range of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Rogers v. Zant,* 13 F.3d 384, 386 (11th Cir. 1994).  Courts "are not interested in grading lawyers' performances" but "are interested in whether the adversarial process at trial . . . worked adequately." *Id.* at 386.  To be unreasonable, the performance must be such that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson,* 257 F.3d 1194, 1216 (11th Cir. 2001).  "[E]ven if many reasonable lawyers would not have done as defense counsel did," a court cannot grant relief on ineffectiveness grounds unless the petitioner shows "that no reasonable lawyer, in the

circumstances, would have" taken similar action.  *Rogers,* 13 F.3d at 386.

The prejudice prong of *Strickland* "requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense." *Butcher,* 368 F.3d at 1293.  In the guilty-plea context, a petitioner must establish "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985).

There is "a 'strong presumption' that statements made by a defendant during his plea colloquy are true.  *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).  Therefore, 'when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.'  *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir.1988)." *United States v. Borden*, 580 Fed. Appx. 870, 871 (11th Cir. 2014).[2]  "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Jones v. United States*, Nos. 12-24521-CIV, 11-20767-CR; 2014 WL 4906217, *13 (S.D. Fla. Sept. 30, 2014)(quoting *United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005)).

---

[2]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it.  ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***." 11th Cir. R. 36-2 (emphasis added).

Walker chose to enter a "blind" plea in this criminal case, as he did not want to give up his right to appeal, and because the government would not offer a recommendation for a sentence at the low end of the sentencing guidelines. (Doc. 5-1 at 2.)

On August 24, 2010 a change of plea hearing was held.  At the plea hearing, Walker was placed under oath and admitted to the following:

    1. He understood the maximum sentence he was facing on a plea of guilty.  (Crim. Doc. 10 at 7-8.)

    2.  He understood he had a right to insist on his earlier plea of not guilty.  (*Id*. at 6.)

    3.  He understood he was giving up his right to a trial by jury at which he would have a presumption of innocence and the Government would have the burden to prove his guilt beyond a reasonable doubt.  (*Id*. at 6-7.)

    4.  By giving up his right to trial by jury, he was giving up his right to have the assistance of counsel at trial, the right not to incriminate himself, and the right to confront and cross-examine witnesses.  (*Id*. at 6-7.)

The court explained the charge and went through the elements required for a finding of guilt.  (*Id*. at 9-11.)  Walker verified that he understood the charge.  (*Id*. at 11.)

At the direction of the court the Assistant United States Attorney stated on the record certain of the facts the government expected to prove should the case proceed to trial. (*Id.* at 12-14.)   The court instructed Walker to interrupt the recitation of the facts if the Government said "anything that [was] not true or that [Walker did] not believe the

government [could] prove." (*Id*. at 12.) The recitation of facts included details of Smith dragging his wife out of her house and forcing her into his truck, threatening to kill her, a high speed chase by law enforcement and the subsequent wrecking of both Smith's truck and the police car.  Walker was then arrested on an outstanding warrant for menacing, and the gun was found during the subsequent search of his truck.  The AUSA further stated that Walker told police that he had placed the gun inside his truck and admitted that he knew that he was not allowed to have a firearm due to his criminal record.  Smith did not interrupt the AUSA's statement of the facts he expected to prove.  When asked by the court, the defendant verified that he had a weapon in his possession on the date alleged, and that prior to that date he had been convicted of two felony offenses. (*Id. At 14.*)

> At that time the colloquy was as follows:
>
> THE COURT:  Mr. Walker, you're not required to enter a plea of guilty, and you are  free at this time to withdraw your plea of guilty and reinstate a not guilty plea.
>
> Have you heard anything here today that causes you to want to reconsider your decision to enter a plea of guilty?
>
> THE DEFENDANT: No, ma'am.  It's just that the domestic thing is –
>
> MR. REID: If I may, Your Honor, he takes issue with the factual statement about the domestic violence and –
>
> THE COURT:   All right.  But do you still desire to enter your plea of guilty to the charge that you possessed a firearm after having been convicted of a felony?
>
> THE DEFENDANT: Yes, ma'am.
>
> . . .
>
> THE COURT: In the presentence report, it may include the government's position

as to what happened that day. And then, Mr. Reid, you need to contact the probation office and, if he has a different position, have that included also. The pertinent thing for the purposes of taking the plea is that he has admitted to the elements of this crime. So since there's not a plea agreement, there's not an agreed-upon factual basis other than the elements of the crime, I guess, and the presentence can contain the government's version and your version.

Defendant's <u>only</u> subsequent dispute with the facts as set out during the plea hearing and in the pre-sentence investigation report was the limited issue regarding his common-law wife's [hereinafter "wife"] broken ribs. (Crim. Doc. 20 at 2-6.)

The court accepted Walker's guilty plea, finding that it was freely and voluntarily entered and that the requisite factual basis for the plea existed. (Crim. Doc. 10 at 15.)

Walker now alleges:

Prior to the entry of my guilty plea, I conferred with counsel regarding the actual intents and purposes of my having possessed the .22 rifle. I wanted the Court to know that it was only used for "hunting" purposes and "sport." I didn't see why I could be in so much trouble when all I ever used the rifle for was getting rid of squirrels and such with my boys around my property. I thought it would matter if the Court would consider this.

Counsel agreed to inform the Court of the guns purpose.

Counsel told me that this information could help me to receive a reduction in my sentence if I pled guilty. Counsel elaborated to me that the Sentencing Guidelines held a provision taking into consideration "hunting" or "sport" use of a firearm.

When I asked counsel if he could get me the reduction if I pled guilty, counsel replied unequivocally, "Yes." He said, "Don't worry, I'll take care of it." I agreed to plead guilty under this understanding. Counsel again reassured me that, "everything would work out fine." Counsel's promise was the motive in my decision to plead guilty.

(Doc. 2 at 24-25.)

7

>Counsel for defendant contradicts these allegations:
>
>The Defendant stated that he possessed the weapon for sporting purposes, however it was explained to the Defendant that the purpose for the possession is not material. . .
>
>It was explained in detail to the Defendant that any particular purpose for possessing the weapon is not a valid defense for such action, and in the best professional judgment of counsel would not be of merit to the Court. I never promised to raise any particular mitigation argument but did promise to raise the issues that were relevant to the charge and to acceptance of responsibility for the offense. . .
>
>The Defendant was informed that the Court would be concerned by his Criminal History and the same could have some effect. While neither I nor the Defendant expected an upward departure the Defendant was informed prior to the plea that it was a possible outcome. I was very aware of the Defendant's past and what issues I felt could be raised in mitigation and those that would not be well received by the Court.

(Doc. 5-1 at 2-3.)

The court finds that Walker's counsel properly investigated the claims against him and that he properly advised Walker of the legal consequences in going to trial. Counsel investigated the factual bases of the charges and appropriately advised Walker. The court finds counsel's performance was not ineffective or deficient. Also, the court finds Walker's statements to the contrary are not credible and provide no reason to set aside his guilty plea. The defendant stated under oath at his change of plea hearing that he had not been promised anything to induce him to plead guilty. The court finds counsel's testimony to be credible and consistent with the known facts of this case.

Further, Walker has suffered no prejudice. The evidence of defendant's guilt was overwhelming. As noted by the government, "Not only was Walker, a convicted felon, found in possession of the rifle at the time of his capture, he later admitted in a voluntary, *Mirandized* statement to having purchased and possessed the weapon." (Doc. 5 at 8.)

At the beginning of his December 2, 2010 sentencing hearing, at the joint request and by agreement of the parties, the court directed a change be made to the pre-sentence investigation report in reference to a guideline issue regarding a false statement the defendant had made to law enforcement as to the circumstances surrounding his wife suffering broken ribs. His wife was present to testify on this issue if it had been necessary, but after the issue was resolved she did not testify, nor did she submit any statement, written or oral, to the court. Thus, as noted by his counsel, there was no outstanding point on this issue which necessitated a continuance.

With that correction, the court adopted the factual statements found in the presentence investigation report. The court then stated that it was inclined to upwardly vary in imposing sentence, and further specifically advised defendant and his counsel "when you are making your allocution it's important to say as much as you want to say because of what I am inclined to do." Defendant then made a statement, apologizing to the court, his family, and "anybody involved that I hurt," and asking for the court's mercy. His counsel spoke on his behalf, acknowledging defendant's history of violent acts, but pointing out defendant's acceptance of responsibility for the instant offense, his long history of substance abuse, his job skills and steady work history, and his family

support. He further indicated that defendant wanted to "correct the ills of his past, to not become a drug abuser in the future, to live responsibly."

At no point during either the plea colloquy nor the sentencing hearing did the defendant assert that he had the rifle for hunting purposes. Indeed the relevant facts, undisputed by Mr. Walker, set out at both at his change of plea hearing and in the offense conduct section of his presentence investigation report, included the defendant's admission that 1) he had "reclaimed" the gun which he had previously given as a gift to his wife's father; 2) the gun was found in his vehicle incident to a search upon his arrest following a violent, abusive incident with his wife; and 3) he knew he was not allowed to have a gun because of his criminal record. (Crim. Doc. 10 at 12-14; Doc. 12 at 5). The court does not find credible Walker's assertion that he had the gun strictly for hunting purposes. Considering the facts and circumstances of the instant offense, as well as the long-term, extremely violent history of defendant, it would have been disingenuous of defendant to assert that the weapon he "reclaimed" was possessed simply to shoot squirrels. There was no evidence whatsoever to support this argument, and, even if believed, the "lawful sporting or collection" provision of U.S.S.G. § 2K2.1(b)(2) could not apply, as defendant was subject to U.S.S.G. § 2k2.1(a)(4) as he committed the instant offense after having a prior felony conviction for a crime of violence.

Mr. Walker further asserts that his counsel should have argued that the instant offense was a "non-violent crime." While mere possession of a firearm by a convicted felon is, by itself, not violent, the circumstances of this offense–its discovery by law

enforcement in defendant's vehicle, during a search after Walker's arrest following his abduction of his wife, highspeed pursuit by police, then crashing of both vehicles–are violent.  There was no mitigation to be found in discussing the specifics of the instant offense.  His counsel wisely tried to avoid making excuses, which would shed doubt on defendant's acceptance of responsibility, and to steer the discussion from topics which would rehash Mr. Walker's violent past, instead focusing on his client's remorse and his desire to rehabilitate himself.

Thus, Mr. Walker cannot succeed on either of the *Strickland* factors.   His counsel's performance was not deficient nor did Mr. Walker suffer any prejudice due to the failure of his attorney to request a continuance to address his wife's allegations of abuse, or to make mitigation arguments that the weapon possessed was used for hunting and this offense was not violent.  During the sentencing proceedings on December 2, 2010, the court made clear that Mr. Walker's long, extremely violent history caused him to be sentenced to the statutory maximum sentence.  (See p. 11-16 of Crim. Doc. 20 attached to this Memorandum Opinion.)

While application of the sentencing guidelines indeed yielded a criminal history numerical value for defendant's prior convictions which was used to establish a guideline sentencing range, the court had the authority under *Booker* to impose a sentence outside the calculated range.  While it considered the guideline sentencing range, the court had a duty to consider the history and characteristics of the defendant in determining an appropriate sentence.  The repeated instances of violence by defendant warranted an

upward departure to meet the statutory requirements of sentencing, most specifically to protect the public from further crimes of the defendant.

## CONCLUSION

Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, (Doc. 1), will be denied as to all claims of ineffective assistance of counsel. A separate Order will be entered contemporaneously with this Memorandum Opinion.

## CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing § 2255 Proceedings, provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). And, the "certificate of appealability may issue . . . *only* if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2)(emphasis added). To make a substantial showing of the denial of a constitutional right, the applicant must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003)(citations and internal quotations omitted).

Mr. Walker's Motion to Vacate, (doc. 1), does not demonstrate that he was denied any constitutional right or that the issues he raises are reasonably debatable and/or deserve encouragement to proceed further. Therefore, issuance of a certificate of appealability is not warranted in this case.

Done this 22nd day of June, 2015.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE